UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIACHESLAV ZHUKOV (A-Number: 249-381-558),<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-1898-DC-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Viacheslav Zhukov entered the United States in 2024 and was re-detained by ICE in 2025.  Petitioner, proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a pre-deprivation hearing violated the Fifth Amendment.  Respondents move to dismiss.  For the following reasons, I recommend that respondents' motion be denied, the petition be granted, and petitioner be immediately released.

**Background**

In June 2024, petitioner entered the United States and was detained by the Department of Homeland Security.  ECF No. 5-3 at 3.  Petitioner claimed asylum because of his fear of returning to Russia.  *Id*.  In January 2025, an immigration judge conducted a bond hearing and ordered petitioner's release from custody.  ECF No. 5-2.  Shortly after his release, petitioner applied for asylum.  ECF No. 1 ¶ 5.  Petitioner has no criminal history.  ECF No. 5-3 at 4.

1

Between May 2025 and September 2025, petitioner allegedly violated the conditions of his parole. He has eight citations for "missed biometric check-in" in May 2025. ECF No. 5-3 at 3. A missed check-in is "[t]riggered when a participant fails to complete a random biometric check-in within 60 minutes of receiving the notification. This can happen if the participant overlooks the alert, their phone is off or silenced, or if they intentionally avoid responding." *Id*. Petitioner also was flagged for a "tracker missed callback" in June 2025 and August 2025. *Id*. This violation occurs "when the GPS device stops communicating with the host system. This can be caused by low battery, the device being powered off, poor cell signal, or a malfunction." *Id*. Lastly, in September 2025, petitioner was cited for a "virtual home visit failed," which occurs when "a participant is not present for a scheduled home visit. This can occur if the participant forgets the appointment, is at work or another obligation, or intentionally avoids the visit."[1] *Id*.

In December 2025, petitioner was re-detained by ICE after an arrest warrant was issued for his parole violations. *Id*. at 2. Petitioner did not receive notice or a pre-deprivation hearing prior to his re-detention. *Id*. Since his re-detention, petitioner has not been afforded a bond hearing. *See* ECF No. 1 ¶ 18.

**Procedural History**

On March 9, 2026, petitioner filed a petition for writ of habeas corpus. ECF No. 1. On March 27, 2026, respondents filed a motion to dismiss the petition. ECF No. 5. Petitioner was ordered to file an opposition by April 3, 2026. *See* ECF No. 4 at 2. However, petitioner did not file an opposition until April 9, 2026 and has not offered any explanation for the failure to comply with the court's order. *See* ECF No. 6. The petition and motion to dismiss are submitted such that I may issue findings and recommendations. *See* ECF No. 4 at 2; Local Rule 302(c)(17).

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of

---

[1] In June 2025, petitioner was flagged for "biometric match failed," but there is no explanation in the record for this alleged violation. *See* ECF No. 5-3 at 3.

2

that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a pre-deprivation hearing violates his Fifth Amendment Due Process rights.[2] ECF No. 1 ¶¶ 40-49. Notably, respondents offer no response to petitioner's due process claim. Instead, they respond only to petitioner's statutory claim and advance an argument premised on the assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). ECF No. 5 at 1-2. In asserting this statutory argument, respondents concede that "the majority of judges in the Eastern District of California have accepted Petitioner's arguments." *See id.* at 1. Respondents do not explain what, if any, binding precedent supports their statutory position. More fundamentally, respondents' focus is misplaced because they do not address petitioner's due process claim.[3]

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

---

[2] Because the petition should be granted on the basis of petitioner's due process claim alone, I find it unnecessary to address petitioner's claims alleging that his re-detention violates the Immigration and Nationality Act and the Administrative and Procedure Act. *See* ECF No. 1 ¶¶ 45-58.

[3] Similarly, I deny respondents' request to hold this matter in abeyance pending the Court of Appeals' resolution of a similar statutory claim. *See* ECF No. 5 at 2.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  *Id.* (quotations omitted).  Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty."  *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release.  *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in January 2025.  ECF No. 1 ¶ 2; *see also* ECF No. 5-2 (immigration judge ordering petitioner's release).  Since his

4

release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for nearly a year.  During that time, he has formed "enduring attachments of normal life."  *See Morrissey*, 408 U.S. at 482.  I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release.  *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  Prior to his re-detention, petitioner had been released in the United States under the supervision of ICE for nearly a year.  During that time, he applied for asylum.  ECF No. 1 ¶ 5; *see also Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

5

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high.  As noted, in January 2025, an immigration judge ordered petitioner's release after determining that petitioner was neither a danger to the community nor a flight risk.  ECF No. 5-2.  Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest.  *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-detention; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty.  *See id*.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide a pre-deprivation bond hearing.  *See* ECF No. 5.  "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

6

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a pre-deprivation hearing violated his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner requests that he be released.  ECF No. 1 at 18.  Respondents do not address this issue.  *See* ECF No. 5.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").  To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  For example, in *Guillermo M.R.*, the petitioner was arrested and charged with vandalism.  791 F. Supp. 3d 1021, 1028 (N.D. Cal. 2025).  ICE learned of the incident the following day, and officials then interviewed petitioner soon afterwards.  *Id*.  ICE then waited an additional five weeks to re-detain the petitioner without a pre-deprivation hearing.  *Id*.  The court held that petitioner was entitled to a pre-deprivation hearing because the respondents' "course of conduct demonstrates their lack of urgency."  *Id*. at 1036.  Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy."  *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

While a pre-deprivation hearing is typically required, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."  *Guillermo M.R.*, 791 F. Supp. 3d at 1036.  For example, in *Martinez Hernandez v. Andrews*, the petitioner was re-detained after allegedly violating his parole, including a failed home visit that occurred approximately two weeks before he was re-detained.  No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *3-4 (E.D. Cal. Aug. 28, 2025).  The court held that a post-deprivation hearing was

7

appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Id*. at \*12; *see also J.S.H.M v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at \*1-2, 16 (E.D. Cal. Oct. 16, 2025) (finding that a post-deprivation hearing was appropriate where the petitioner was re-detained one week after allegedly violating his parole).

Here, petitioner was re-detained on December 28, 2025 for violating his parole, with his most recent violation occurring on September 30, 2025. *See* ECF No. 5-3 at 2-3. Notably, unlike the two-week delay in *Martinez Hernandez*, ICE waited three months after petitioner's most recent violation to re-detain him. *See id*.; *Martinez Hernandez*, 2025 WL 2495767, at \*4. Respondents offer no explanation for this delay, even though their records reveal that some of petitioner's parole violations were "to be addressed and resolved that same day." *See* ECF No. 5-3 at 3. That ICE waited three months to re-detain petitioner suggests that the agency determined he was neither a danger to the community nor a flight risk; as such, ICE officials' "course of conduct demonstrates their lack of urgency." *See Guillermo M.R.*, 791 F. Supp. 3d at 1036. Under these circumstances, respondents fail to demonstrate that providing petitioner "with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."[4] *See Martinez Hernandez*, 2025 WL 2495767, at \*12.

Accordingly, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at \*21.

---

[4] It also bears mention that the only evidence of parole violations indicates that petitioner may not have knowingly violated his parole. Petitioner's "tracker missed callback" violations could have been the result of "low battery, the device being powered off, poor cell signal, or a malfunction." *See* ECF No. 5-3 at 3. Petitioner's "missed biometric check-in" violations could have happened if he "overlook[ed] the alert" or his "phone [was] off or silenced." *See id*. And petitioner's "failed home visit" might have occurred because petitioner was "at work or another obligation." *See id*.

**Conclusion**

Based on the foregoing, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents' motion to dismiss, ECF No. 5, be DENIED.

3. Respondents be ordered to immediately release petitioner (A-Number: 249-381-558) from their custody.  Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing.  If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.  This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be further directed to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    April 23, 2026                                    _____
                                                           JEREMY D. PETERSON
                                                           UNITED STATES MAGISTRATE JUDGE